STATE of Missouri, Respondent,

v.

Elgin BAUMAN, Appellant.

No. 44233.

Supreme Court of Missouri.

Division No. 2.

Sept. 10, 1956.

L. Clark McNeill, Dorman L. Steelman, Salem, for appellant.

John M. Dalton, Atty. Gen., Will F. Berry, Jr., Asst. Atty. Gen., for respondent.

LEEDY, Judge.

Elgin Bauman was convicted in the Circuit Court of Carter County (on change of venue from Shannon County) of the felony of obtaining money by false pretenses, Section 561.370 RSMo 1949, V.A.M.S.,

sentenced to imprisonment for a term of two years and one day, and by appeal he has brought the case to this court for review.

The prosecution arises out of the sale of a used automobile by the accused to the prosecuting witness, Jerry Lee Weaver, for an agreed purchase price of $1,400, which was paid by the buyer in cash. Defendant lived in St. Louis, where he was engaged in the automobile business, either as the operator of a used car lot, or as a salesman. At one time he and Jerry Lee's sister, Mavis, had been engaged in the business together. The prosecuting witness (a youth then 17 years of age) lived at home with his parents at Winona in Shannon County. For some years prior to the time in question defendant had made periodical visits in the Weaver home in Shannon County in company with Mavis, so that he and Jerry Lee and the latter's parents and other members of the family were well acquainted, and on friendly and cordial terms.

Jerry Lee accompanied his parents on a visit to Mavis and another sister in St. Louis during Thanksgiving week, 1950. He was desirous of purchasing a 1950 black Chevrolet, and so informed Mavis, and she referred him to defendant, who in turn sought to find such a car for him. Defendant and Jerry Lee spent parts of the next ensuing days together, attending car auctions, and otherwise attempting to locate a car of the description mentioned. On Saturday night after Thanksgiving defendant appeared at the home of Jerry Lee's other sister in St. Louis, and told the prosecuting witness he had found the car he was wanting, and that it had "come in off of a convoy from Tennessee." The next day (Sunday) Jerry Lee and Mavis drove the car from St. Louis to Winona, defendant following in another vehicle. It having proved satisfactory to his parents as well as to Jerry Lee, a loan was arranged at the Winona Savings Bank, and the sale was there consummated on Mon-

day morning, there being present the cashier of the bank, Joe Roberts, Jerry Lee, his mother, his sister Mavis, and defendant. Some two or three months later Jerry Lee voluntarily surrendered the car to a highway patrolman on the representation that it was a stolen car. What disposition was made of the car thus surrendered does not appear. Its history stops at that juncture insofar as the record is concerned, except that it is clear that it was not taken from the prosecuting witness by virtue of any writ or process, nor with defendant's knowledge or consent. The information in the case was filed a year and a half thereafter.

The averments of the information with respect to the false pretenses made by defendant were as follows: That he "did falsely pretend and represent to the said Jerry Lee Weaver that he was the owner of one Chevrolet automobile Tudor Sedan, Motor number HAA891170, Model 1950, which he desired to sell, and that he had a right to sell, and could pass a good title to the said automobile to the said Jerry Lee Weaver." The information alleges that these representations were believed by Jerry Lee, and relying thereon he was induced to buy the car, paying defendant $1,400 therefor. It further alleges that "in truth and in fact, the said Elgin Bauman was not then and there the owner of the said automobile, and had no right to sell the same whatever, which he, the said Elgin Bauman then and there well knew," etc.

It was known and fully understood by all concerned, including the banker, that the name of defendant did not appear on the title papers, and that whatever title he had was evidenced by a Tennessee certificate of registration issued in the name of A. G. Martindale of the City of Newhun, Tennessee, as owner, and an acknowledged bill of sale to said registered car from "A. G. Martindale" in which the name of Martindale's grantee or purchaser had been left blank. Mavis had these papers in her purse when the parties went to the bank to close the transaction. Jerry Lee testified that, acting under defendant's direction, she filled them out (including an application for a Missouri title) and, as we understand it, inserted Jerry Lee's name as purchaser in the appropriate blank space in the bill of sale. A Missouri certificate of title and license were subsequently issued in Jerry Lee's name on the basis of the instruments mentioned.

■ The critical question on this appeal is that of the sufficiency of the evidence with respect to the falsity of the pretenses or representations charged, and of defendant's knowledge of their falsity. For present purposes it may be assumed that the state proved defendant made the representations charged in the information with respect to his ownership of the car, and his right to sell and pass good title. The burden was upon the state to show not only that those representations were false but also defendant's knowledge of their falsity, both being essential elements of the crime charged. State v. Eudaly, Mo., 188 S.W. 110; State v. Houchins, Mo., 46 S.W.2d 891.

■ The theory on which the state tried the case was that defendant did not own the Chevrolet, and acquired no title to it under the bill of sale and Tennessee certificate of registration for the reason that the car had been stolen from its rightful owner in the City of St. Louis on or about November 23, 1950, during the very Thanksgiving week in question. On the issue of defendant's knowledge of the falsity of his representations, the state invokes what it contends was a permissible inference of guilty knowledge on his part of the fact of such larceny arising from defendant's possession of the car within two or three days after it was stolen.

The difficulty with the state's position is that the evidence by which it was sought to prove the fact of larceny of the car amounted to nothing more than hearsay.

The showing in that regard was that the Police Department in St. Louis received a report that a 1950 black Chevrolet belonging to Thomas M. Gaines of 1617 Benton had been stolen sometime between 10 P.M., November 22 and 3 A.M., November 23 from in front of 1713 Graton; that the activities of the officers were based on that report; that the car so reported as stolen was subsequently identified by such officers as the one sold by defendant to the prosecuting witness, which, as above stated, Jerry Lee voluntarily surrendered. There was no other proof of the larceny. Neither Gaines nor anyone for him was called to verify the reported theft, and the proof in that behalf rested upon the report. It does not appear that, if actually stolen from Gaines, the car was ever returned to, or at any time identified by him. There being no competent evidence of the larceny of the car, no inference of guilty knowledge thereof on defendant's part, such as the state relied on, could arise, and a conviction based thereon should not be allowed to stand.

But the state now disavows the necessity of proving either that the motor vehicle had been stolen, or that defendant had knowledge of such fact, this because, as its brief says, it "was definitely shown that appellant was not the owner of the motor vehicle, and that he had no right to sell the same, which were the pertinent facts involved in the false pretense made to the complaining witness." This cryptic statement of the state's present position is buttressed neither by the citation of authority nor discussion and argument, and we are frankly at a loss to understand precisely what is meant by it. It is to be remembered that the only assault upon the bona fides of the Tennessee registration and bill of sale was that based on the supposed larceny of the vehicle. It is probably true that defendant's sale of the car to the prosecuting witness constituted a violation of Section 301.210 RSMo 1949, V.A.M.S. (in that he had not previously obtained directly and in his own name a certificate of ownership), and, under Section 301.440 RSMo 1949, V.A.M.S., that would be a misdemeanor; but that is not the offense for which he was tried. His title may have been incomplete because of his failure to obtain such a certificate, but if his purchase under the Tennessee instruments were otherwise valid (and the proof fails to show to the contrary), then a representation of ownership in the circumstances here present would not amount to a criminally false pretense because the right or interest he acquired through the purchase was clearly such as would ripen into full legal title upon the issuance to him of the certificate of ownership to which he would be entitled. This is particularly true under the facts of this case where it was known by the prospective buyer and the banker who loaned the money on the car that such a certificate had not been issued. But aside from all of this, it would have been error of the rankest and most prejudicial kind to have permitted the state to make the showing it did by the police officers in undertaking to prove that the car was stolen if, as it is now contended, there was no necessity therefor, so that, in any event, the judgment should not be affirmed.

The nature of the other alleged errors make it unlikely that they will recur upon another trial, so they need not be determined on this appeal. Because of the insufficiency of the evidence in the respects hereinabove pointed out, and for the reasons mentioned, the judgment is reversed, and the cause remanded for new trial.

All concur.